IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BP AMERICA PRODUCTION COMPANY,

    Plaintiff,

v.                                                                           No. CIV 05-578 JB/WPL

RAYMOND L. KYSAR, PATSY SUE KYSAR,
and THE KYSAR FAMILY TRUST,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the Kysars' Motion for Brillhart Abstention and Stay, with Supporting Memorandum, filed October 31, 2005 (Doc. 24). The Court held a hearing on this motion on December 9, 2005. The primary issues are: (i) whether the analysis in Brillhart v. Excess Insurance Company of America, 316 U.S. 491 (1942), or in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), governs a determination to grant a dismissal or a stay in this instance; and (ii) whether, under the appropriate analysis, a dismissal or stay should be issued. Because the Court believes that the analysis in Colorado River controls this matter and that the criteria for deferring to concurrent state court proceedings as set out in that case are met, the Court will issue a stay and abstain from proceeding further with this case at present.

**FACTUAL BACKGROUND**

    The parties have been involved in a long-term dispute over access to various gas wells that Plaintiff BP America Production Company ("BP") operates near or on the ranch that the Defendants ("Kysars") own in San Juan County, New Mexico (the "Kysar Ranch"). Mineral leases and pooling orders establish the parties' rights. BP is not the only company that claims the right to use the Kysar

Ranch; other oil, pipeline, and oil field service companies use the Kysar Ranch for their own purposes. As a matter of corporate policy, and unlike some oil companies operating in the San Juan Basin, BP has taken the position that it will not pay anything beyond a nominal amount for access, apparently because compensation would reduce its profits and because BP fears the precedent it might establish for the hundreds of wells it operates in the San Juan Basin.

BP's Kysar Ranch operations were the subject of litigation before the federal courts in Kysar v. BP America Production Co., No. 00-CV-0958 LFG/KBM (D.N.M. 2004) ("Kysar I"). In Kysar I, the Kysars filed the action in state court, but BP removed it to federal district court. That case involved the narrow issue of access by BP to a single well on property adjacent to the Kysar Ranch via a route across the Kysar Ranch. In Kysar I, there was no related case pending in state court, so the issue of abstention did not arise, and there was no basis for abstention in favor of the state judicial process.

In Kysar I, the Kysars appealed the district court's decision to the United States Court of Appeals for the Tenth Circuit. After hearing oral argument and taking the case under advisement for nine months, the Tenth Circuit – recognizing the uniqueness and difficulty of the state law issues presented – sua sponte certified the decisive questions of law to the Supreme Court of New Mexico for decision. The Supreme Court of New Mexico issued its opinion, see Kysar v. Amoco Production Co., 2004-NMSC-025, 135 N.M. 767, 93 P.3d 1272, and the Tenth Circuit reversed the district court and remanded the case to the district court for further proceedings, see Kysar v. Amoco Production Co., 379 F.3d 1150, 1157 (10th Cir. 2004). The parties subsequently settled that dispute.

Because Kysar I did not resolve all issues between the parties, the Kysars filed an action in state district court in New Mexico seeking to quiet title to the Kysar Ranch and raising several other

-2-

causes of action, all based on New Mexico state law. See Kysar v. Johnson, et al., No. D-1116-CV 2005-824-1 (11th Jud. Dist. N.M.) ("Kysar II"). Kysar II names all of the known persons and entities who have claimed an interest in the Kysar Ranch or who may assert such an interest, including BP, and a number of other individuals, most of whom are likely New Mexico residents. The Kysars have already served at least two of the defendants in that case who are New Mexico residents.

On July 13, 2005, the Kysars served discovery in the state action requesting information about BP's royalty owners. BP stalled discovery, though, by filing a notice of removal in Kysar II and removing the case to federal court. The federal district court, however, granted the Kysars' Motion to Remand and remanded that case to state court. Kysar v. Johnson, CV05-0794 WJ/LCS (D.N.M. 2005).

After remand, counsel for the Kysars pressed discovery and, on October 28, 2005, BP provided responses, consisting mainly of objections. At present, the Kysars do not know whether the documents that BP has agreed to produce contain information about BP's royalty owners.

**PROCEDURAL BACKGROUND**

Before BP filed this case, the parties had been negotiating for months in an effort to resolve their disputes without resorting to another legal battle. Ultimately, however, BP filed this declaratory judgment action against the Kysars in federal court, pursuant to 28 U.S.C. § 2201.

This declaratory judgment action concerns BP's claimed rights of access on the Kysar Ranch. BP requests that the Court determine its rights as mineral interest owner vis-a-vis the Kysars as surface owners. These claims, along with the claims of many other, non-diverse parties, are the subject of the pending quiet title action that the Kysars filed in state court in Kysar II.

The Kysars have argued that BP has declined to name indispensable or necessary parties

because to name all the interested parties would destroy federal diversity jurisdiction. The Kysars filed a motion to dismiss based on the failure to name indispensable parties. On October 25, 2005, the Court issued an order denying the Kysars' Motion to Dismiss based on the failure to name indispensable parties. The Court indicated, however, that, to the extent that indispensable parties are identified through discovery, the Court would entertain a renewed motion to dismiss based on the indispensable party issue.

## **LAW REGARDING ABSTENTION**

With regard to declaratory judgment actions brought under 28 U.S.C. § 2201, where duplicative state proceedings exist, federal district courts are "under no compulsion" to grant declaratory relief. Rather, they have "unique and substantial discretion" in deciding whether to declare litigants' rights that can also be decided in state proceedings. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). See Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942); United States v. Las Cruces, 289 F.3d 1170, 1179-80 (10th Cir. 2002); State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 982 (10th Cir. 1994). In exercising such discretion, district courts should engage in an analysis based upon the factors enunciated in Brillhart, Wilton, and Mhoon.

In contrast, actions brought seeking declaratory judgment in combination with other forms of relief, such as coercive relief, limit district courts' breadth of discretion in determining whether they are to be heard even in the face of parallel state proceedings. District courts may only stay or dismiss such actions when "extraordinary circumstances," as established by a weighing of the factors laid out in Colorado River, warrant. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 14-15 (1983). Highlighting the distinction between Brillhart and Colorado River cases, the United States Court of Appeals for the Fifth Circuit, in a case contained within a stream of cases to which

-4-

the Tenth Circuit has cited favorably, has held:

> Brillhart abstention is applicable "when a district court is considering abstaining from exercising jurisdiction over a declaratory judgement action. In contrast, when actions involve coercive relief the trial court must apply the standards enunciated by the Court in Colorado River." [Defendant] concedes that [Plaintiff] has requested both declaratory and injunctive relief, but argues that Brillhart is nevertheless applicable because [Plaintiffs] claims for coercive relief are merely "ancillary" to its request for declaratory relief. This Circuit has rejected similar arguments on at least two occasions.[1] When a party seeks both injunctive and declaratory relief, the appropriateness of abstention must be assessed according to the doctrine of Colorado River; the only potential exception to this general rule arises when a party's request for injunctive relief is either frivolous or is made solely to avoid application of the Brillhart standard.

Black Sea Inv., Ltd., v. United Heritage Corp., 204 F.3d 647, 652 (5th Cir. 2000). See United States v. Las Cruces, 289 F.3d at 1181-82 (citing approvingly to Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co., 214 F.3d 562 (5th Cir. 2000), to maintain that "in a suit seeking coercive relief as well as declaratory relief, broad Brillhart standard inappropriate."); Safety Nat'l Cas. Corp. v. Bristol-Myers Squibb Co., 214 F.3d at 564 (relying on Black Sea Inv., Ltd., v. United Heritage Corp., 204 F.3d at 652, and Southwind Aviation, Inc. v. Bergen Aviation, Inc., 23 F.3d 948, 951 (5th Cir. 1994), to hold that, where "coercive relief is sought in addition to declaratory relief, the applicable standard is Colorado River.").

Given the Tenth Circuit's favorable citation of the Fifth Circuit's line of reasoning concerning the applicability of the Brillhart and Colorado River standards, and because BP seeks both declaratory and injunctive relief in its complaint, the Court believes that Colorado River should govern in this

---

[1] With respect to the Kysars' assertion that the Brillhart standard should apply because BP's request for injunctive relief is "secondary," see PPG Industries, Inc. v. Continental Oil Co., 478 F.2d 674, 679 (5th Cir. 1973) (holding that "to label the claim for an injunction "ancillary" does not advance analysis; [Plaintiff] expressly requests both remedies in its complaint and the prayer for a declaratory judgment cannot obscure or weaken the prayer for an injunction.").

case. That stated, as Colorado River provides a more exacting standard than Brillhart with respect to the Court's discretion to issue a dismissal or a stay in the current circumstances, it is necessarily true that, if the Court finds that the Colorado River criteria for granting a dismissal or a stay are met, so too are the criteria for issuing a dismissal or stay under Brillhart.

In Colorado River Water Conservation Dist. v. United States, the Supreme Court of the United States reviewed the decision of a district court to dismiss an action brought by the United States in deference to an ongoing state court proceeding. See 424 U.S. at 805-06. See Wilton v. Seven Falls Co., 515 U.S. at 284. The United States was seeking a declaration of its water rights, the appointment of a water master, and injunctive relief. See id. at 284. In overturning the Tenth Circuit and affirming the district court's determination, the Court articulated several factors that district courts should consider in assessing whether to grant dismissals or stays in instances where similar issues are being concurrently litigated in state courts. Those factors are: (i) whether the questions before the court present difficult questions of state law, are governed by state as opposed to federal law,[2] or bear on policy problems of substantial import to the state; (ii) whether principles of wise judicial administration and economy suggest deferring to the state courts; (iii) which court first assumed jurisdiction over any property at issue; (iv) whether the federal forum is less convenient; (v) whether allowing the matter to go forward in state court would avoid piecemeal litigation; and (vi) in which order jurisdiction was obtained by the concurrent forums. See Colorado River Water Conservation Dist. v. United States, 424 U.S. at 814-19; Burford v. Sun Oil Co., 319 U.S. 315 (1943).

In a subsequent case, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, the

---

[2] With regard to this factor, its development can be traced from Colorado River, 424 U.S. at 825-26, to Will v. Calvert Fire Ins. Co., 437 U.S. 655, 667, 668-77 (1978), and on to Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 23.

Supreme Court revisited the factors introduced in Colorado River, providing more guidance as to their application. The Moses Court stated: "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Id. at 15-16. Addressing the factor concerning in which order jurisdiction was obtained, the Court also asserted that:

> This factor, as with the other Colorado River factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. Colorado River illustrates this point well. There, the federal suit was actually filed first. Nevertheless, we pointed out as a factor favoring dismissal "the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss."

Id. at 21-22.

## ANALYSIS

This litigation presents almost all of the factors that the courts have discussed as relevant in an abstention analysis concerning requests for both declaratory and coercive relief. Colorado River, and Moses suggest abstention and deference towards the quiet title action that is now proceeding in state court. The Court will follow the guidance of those decisions and abstain from hearing this case.

### I. THE COLORADO RIVER DOCTRINE.

Most, if not all, of the relevant factors indicate that the federal court may and should abstain from entertaining the declaratory judgment action, which BP has filed, in favor of the pending state court case involving the same parties and issues. A consideration of each of the factors enunciated in Colorado River and Moses, in light of the circumstances of the dispute between the parties, supports a decision for the Court to abstain.

### A. THE CASE MAY PRESENT COMPLEX ISSUES OF NEW MEXICO LAW CONCERNING REAL PROPERTY, AND THE TENTH CIRCUIT HAS ALREADY DECIDED ONCE THAT A NEW MEXICO COURT SHOULD DECIDE SIMILAR QUESTIONS.

New Mexico substantive law regarding real property, easements, mineral rights, and access across the surface of lands for the development of oil and gas on adjacent tracts – not federal law – governs this case. The disputes between the parties will require an examination and interpretation of New Mexico property law. This action may necessarily involve the interpretation and application of the Supreme Court of New Mexico's decision regarding the new wells that BP wants to drill, as well as other issues of New Mexico real property law.

The Tenth Circuit has already determined that the state court should, in the first instance, decide a similar issue. As Kysar I showed, the certification procedures under 10th Cir. R. 27.1, N.M. Stat. Ann. §§ 39-7-1 through -13, and N.M.R. App. P. 12-607 serve the interests of federalism by allowing state courts to decide important issues of state law.

While federal courts can and should decide questions of state law when necessary, such resolution of state law questions is not necessary in this instance. Moreover, the essential design of federalism is that the resolution of questions not involving federal law should be the primary responsibility of the states, and not of the federal courts. This fundamental policy is one reason why the Supreme Court has ruled in Brillhart, and underscored again in Wilton, that declaratory judgments should not be used as a means of bypassing state courts on questions of state law. See e.g. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 23; Will v. Calvert Fire Ins. Co., 437 U.S. at 667, 668-77.

There are no federal issues to be resolved in this litigation; therefore, the declaratory action would serve no purpose in clarifying the federal legal relations or rights of the parties. The Court will

follow the guidance of Brillhart, Moses, and Kysar I, and let the state court decide the state issues that the case likely raises.

### B. JUDICIAL ECONOMY AND EFFICIENCY SUGGEST THAT THE CASE SHOULD BE DECIDED IN NEW MEXICO STATE COURT.

The state courts in the quiet title action will decide most, if not all, of the issues in this case. The federal case will, at most, decide only some of the issues that the state case raises. The state courts can provide an efficient, comprehensive, and authoritative decision through the normal course of litigation, without risking the need to resort to extraordinary procedures like certification. Abstention is the more judicially economical way to proceed. State courts are the more appropriate forum for resolving property issues unique to state law. In the interests of judicial economy, as expressed in Colorado River and Moses, and the proper allocation of functions under federalism, the Court will abstain from consideration of this matter in deference to the state court matter being litigated.

### C. THE NEW MEXICO STATE COURT ASSUMED JURISDICTION OVER THE PROPERTY ISSUES CLOSE IN TIME TO WHEN THIS COURT ASSUMED JURISDICTION OVER THE CASE.

Like the litigation in Colorado River, this litigation involves property rights. BP filed its action in federal district court before the Kysars filed their case in state court, but service was completed with respect to BP in the state case before it was completed with respect to the Kysars in the federal case. The state court acquired jurisdiction over the property at issue close in time to the time that this Court assumed jurisdiction.

### D. IT MAY BE MORE CONVENIENT TO TRY THIS CASE IN THE ELEVENTH JUDICIAL DISTRICT, WHICH HAS FACILITIES WHERE THE PROPERTY AND MOST OF THE WITNESSES ARE LOCATED.

The locus of this controversy is in San Juan County, in the Eleventh Judicial District. That county is where the property is located, where the Kysars live, where most of the witnesses are located, and where many of the allegedly necessary parties reside. There is no federal courthouse in the area. The nearest federal courthouse is in Albuquerque. The parties would be forced to travel to hearings at a considerable distance. By contrast, the state court system has courthouses in Farmington, Aztec, and Gallup that can be used.

### E. FAILURE TO ABSTAIN COULD RESULT IN PIECEMEAL LITIGATION, WHICH IS AN UNNECESSARY BURDEN ON SOME OF THE PARTIES AND UPON THE COURTS.

BP argues that its particular questions concerning access can be neatly separated from the rest of the state case. This severance may be possible, but the Court cannot be certain, at this stage, that it will be. Decisions affecting access may affect other people besides BP – royalty owners, contractors, pipeline companies, and other people who claim the right to cross the Kysars' land.

In any case, even if BP is correct, the result would still be piecemeal litigation at best. That result appears contrary to the Supreme Court's holding in <u>Colorado River</u> and to the directives in the Federal Rules of Civil Procedure, the purpose of which is to decide all issues in one lawsuit, not in multiple lawsuits. Courts should avoid duplication of litigation whenever possible, because all litigation is expensive and especially so in federal court. Any duplication of effort by the parties and by the judicial system can be avoided by allowing the state court action to decide all the questions between all of the parties.

Moreover, the federal declaratory relief action will not settle the entire controversy. While

BP takes the narrow view that it is only interested in establishing its unfettered right to access across the Kysar Ranch, the Court cannot say definitively at this stage of the proceedings that its rights will have no impact, directly or otherwise, on the rights of surface use of any others besides the Kysars. While there is no doubt that, for the most part, the rights of surface use belong to the Kysars, there is some possibility that BP will also compete with other rightful surface users, such as Coleman Oil Company.

The Court could find itself settling a controversy regarding BP's access rights that would not be binding on all of the parties in the state court proceedings who are not parties in the federal case. While there are certainly differences between water litigation and litigation over access rights, the possibility of competing property rights suggests that the Court should be careful before slicing off a portion and litigating it separately in federal court.

    **F.**    **ALL THE PARTIES WERE BEFORE THE NEW MEXICO STATE COURT BEFORE THEY WERE ALL BEFORE THIS COURT AND THE PROCEEDINGS HAVE ADVANCED FARTHER ALONG IN THE STATE COURT.**

While BP filed its action with this Court before Kysar filed its action in New Mexico state court, Kysar served BP before BP served the Kysars. The state court, therefore, had all the parties before it before all the parties appeared in the federal court, despite that the federal case was filed first. Furthermore, it is important to note with respect to this factor, per Moses, that the state court proceedings have progressed farther than those in this Court. Discovery has already commenced in the state court – the Kysars have served written interrogatories and requests for production on BP to which BP has responded or is in the process of doing so – and several of the other defendants have already filed their answers there. By comparison, proceedings in the federal court had not much moved beyond the filing of the complaint before the Motion for Abstention and Stay was submitted.

## II.   CONSIDERATIONS FROM BRILLHART.

While Colorado River and its progeny cases govern the court's decision, two of the factors that the Supreme Court enunciated in Brillhart also appear pertinent.

### A.   THE DECLARATORY ACTION HAS THE POTENTIAL OF CREATING INCREASED FRICTION BETWEEN THE FEDERAL AND STATE COURTS, AND TO IMPROPERLY ENCROACH UPON STATE JURISDICTION.

The Court's concern regarding friction with the state courts centers on the special role and expertise state courts have in adjudicating state property law. The state court action is a quiet title action, dependent on the interpretation of New Mexico property law. BP's specific issues relate to the scope of its rights of ingress and egress based on the interpretation of mineral interest leases, and an interpretation of easement law under New Mexico law. In Kysar I, which dealt with similar disputes over ingress and egress by BP across the Kysar Ranch, the Tenth Circuit recognized that the Supreme Court of New Mexico was the best and most appropriate forum in which to address the important state law issues, and the Tenth Circuit certified the significant questions of law in Kysar I to the state court. Just as water rights adjudications traditionally have been within the ambit of state court expertise, see United States v. Las Cruces, 289 F.3d at 1190, so is the adjudication of complex property issues.

If the federal courts were to adjudicate and declare property rights, such adjudication could encroach upon the traditional jurisdiction of state courts. See id. The issue whether federal jurisdiction would result in friction with the state courts and encroach on their traditional jurisdiction weighs against the exercise of federal jurisdiction.

### B. THE STATE AND FEDERAL CASES ARE SUFFICIENTLY SIMILAR SUCH THAT THE FEDERAL COURT SHOULD ABSTAIN AND ALLOW THE PROCEEDINGS TO GO FORWARD IN STATE COURT.

While the federal court cannot litigate all of the claims that are present in Kysar II because it cannot establish jurisdiction over all of the parties because of lack of diversity, the state court could litigate the dispute that BP commenced in federal court. The same issues have been raised in Kysar II. The state case, Kysar II, is more expansive than the federal case. The state case is a quiet title action, filed with the intent of settling all possible claims, including BP's, against the title to the Kysar Ranch. The federal case addresses only the access issues relating to BP's rights.

While the cases are not identical, they are similar, and the state case includes the litigation of the same issues that the federal case raises. This factor, coupled with the fact that the issues require the interpretation of New Mexico property law, weighs in favor of allowing the state case to go forward, while the federal court abstains from the matter. Because Kysar II is pending in state court and will provide BP with an adequate remedy, the Court will stay all proceedings until Kysar II is decided. The Defendants have met their heavy burden of showing that the Court should abstain from hearing this matter.

The Kysars also ask the Court, alternatively, to dismiss this matter without prejudice. The Court will instead, however, stay the case until the state case that the Kysars have brought to quiet title is more fully litigated and, if appropriate, resolved. It may be that a decision in the state court will moot any need to litigate the claims in the case here.

**IT IS ORDERED** that the Kysars' Motion for Brillhart Abstention and Stay is granted in part and denied in part. The Court will abstain from consideration of this matter by staying all proceedings in this matter. The Court will deny the Kysars' request to dismiss this declaratory judgment without

-13-

prejudice. The parties will provide a status report to the Court on the state proceedings within 120 days of the date of this order. The parties may do so by letter if they wish.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Bradford C. Berge
William F. Carr
Ocean Munds-Dry
Holland & Hart, LLP
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*

Victor R. Marshall
Diane P. Donaghy, Of Counsel
Victor R. Marshall & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendants*